*GASQUET & AL vs. JOHNSON & AL.*

GASQUET & AL.
vs.
JOHNSON & AL.

| iL | 425 |
|---|---|
| 45 | 795 |
| 1 | 425 |
| 115 | 677 |

The rights of different creditors are to be examined in concurrence only in cases of actual insolvency, either by a voluntary or forced surrender on the part of a debtor.

No distinction exists between suits prosecuted in the ordinary mode by citation, and those which are pursued by attachment.

In a suit upon a bill of exchange, an amendment, changing the amount of the bill, is not altering the nature of the suit.

Amendments may be allowed after issue joined.

When a witness is to be examined on interrogatories, if an opportunity, as pointed out by law, be given to the adverse party to file cross interrogatories, notice of the time and place of taking the answers is not required. Therefore if the commissioner give an erroneous one, the mistake will not be fatal.

APPEAL from the first judicial district.

Suit, by attachment, was brought against the defendant, a merchant at Nashville, as drawer of a bill of exchange on a merchant of the latter place, and returned under protest for non acceptance. Several other creditors afterwards, brought suit, and the writs of attachment were levied on the same property that had been previously attached by W. A. Gasquet and Co. After the cause, which had already been before this court, was remanded, (see vol.

8, n. s. p. 544,) the attorney appointed to re-present the defendant, filed a general denial.

In the original petition, the bill of exchange was stated to be for the sum of five thousand four hundred and sixteen dollars and two cents, and *bearing interest after six months by agreement at the rate of six per cent. per annum*, making in all the sum of five thousand six hundred and thirty-seven dollars forty-seven cents.

An amended petition was afterwards offered, and allowed to be filed, which alleged that the bill had been erroneously described; that the *interest had been included* in the bill at the time it was drawn, and that it was drawn for the aforesaid sum of five thousand six hundred and thirty-seven dollars and forty-seven cents, being principal and interest.

Otis Loomer and Co. and the other creditors whose attachments had been levied on the same property on which the plaintiffs had attached, prayed to be allowed to intervene on the ground that the plaintiffs ought not to have been permitted to amend their petition, that the court erred in allowing this amendment, and that they were aggrieved by this decision inasmuch as the property attached was insufficient to dis-

charge the claims of all the attaching creditors, and that had not this amendment been allowed, the plaintiffs would have failed in their action. The plaintiffs denied their right to intervene. The court, sustained the objection, and dismissed the petition of intervention ; from this decision the interpleaders appealed.

To prove the protest of the bill, and due notice to the defendant of its dishonour, the plaintiffs offered in evidence the deposition of a notary public, taken under a commission, directed to Nashville. The interrogatories to the witness had been served on the counsel of the opposite party, who had subjoined cross interrogatories. On the return of the commission it appeared, that notice of the time and place of executing the commission had been given by the commissioner to the defendant then at Nashville, but that the examination of the witness had taken place at a different time from that mentioned in the notice. The introduction in evidence of the deposition was objected to on the ground of this variance, and the deposition was rejected.

A witness on the part of plaintiffs testified, that he was present at a conversation between one of the plaintiffs and the defendant, in which

Eastern District,
*May*, 1830.

GASQUET & AL.
*vs.*
JOHNSON & AL.

the latter had observed that " he did not wish to oppose any obstacle to the recovery of plaintiffs' debt," and if he had obtained any preference by his prior attachment or execution, did not wish to interfere in the matter; that they were all just debts, and his wish and intention was to pay them all. He regretted the protest of the bill, and spoke of his absence as being the cause of it; said that plaintiffs had acted honorably, [but that nevertheless he wished them to be paid."

The court *a quo* considered this conversation as an admission of the debt or a waiver of notice, and rendered judgment for the plaintiffs.

The defendant appealed. *Conrad* for plaintiffs. Contended that the court was correct in dismissing the petition of the interpleaders. He quoted on this point. Norris' heirs *vs* Ogden, Mart. Rep. vol. II. p. 460—1. Clamageran *vs*. Brookes, and Hendricks et al. 4. n. s. 487. Pierre et al *vs*. Massa et al. 7. n. s. 196.

That the court erred in rejecting the deposition of the witness examined under the commission to Nashville. Cited Code Practice, art. 426, 430. Will *vs*. Jett, Mart. Rep. 6. n. s. 280.

That the expressions used by defendant in his conversation with one of the plaintiffs as detailed by the witness, were either a waiver of notice, or an admission that he had received it. Cited Baily on Bills, p. 320.

*M'Caleb*, for appellant.

The bill of exceptions taken to the opinion of the judge *a quo* in dismissing the opposition must be sustained. This is one of the very cases mentioned in the Code of Practice, where the opposing parties were claiming higher privileges than Gasquet and Co. upon the ground of prior attachments, and where they had reasons to fear injury would result to them. C. P. 389, 395. 391, 393, 5 M. n. s. 501.

The order for attachment was given by the *clerk*, when it is not shown that the judge was absent. C. P. 239, 780.

The amended answer should not have been permitted to be read; it changed the nature of the action. C. P. 171, 172, 260.

*Slidell*, for defendant.

MATHEWS, J. delivered the opinion of the court. This suit is by attachment, and brought on a protested bill of exchange which

Eastern District. *May*, 1830.

GASQUET & AL.
*vs.*
JOHNSON & AL.

was drawn by the defendant, Johnson, in favor of the plaintiffs on Kyle and Orr of Nashville, Tennessee. Judgment was rendered in the court below for the plaintiffs, from which the defendants appealed.

The cause was one previous to the present appeal before this court. The judgment of the district court was then reversed, and the case remanded to be tried *de novo.*

The evidence on which the last judgment has been rendered in the court below, is fully spread on the record, to the admissibility of which several bills of exceptions were taken. But before examining them, or the merits of the suit ; it is necessary to dispose of the claims and pretensions of certain intervening parties, Otis Loomer and Co. and others. The first attachment levied on the property of the defendant, was that of the plaintiffs Gasquet and Co. Afterwards the same goods were seized at the instance of other creditors, under attachments issued subsequently to that of the plaintiffs. Finding that Gasquet and Co. had obtained a preference on the property of the defendant, by the priority of their attachment, the other creditors then intervened with the avowed purpose of defeat-

ing the action of the original plaintiffs, and allege various errors in the proceedings by which it was carried on. The first question to be settled in relation to these parties, is whether they have a right to intervene? To show that they have, their counsel relies on the provisions of the Code of Practice, on the subject of intervention or interpleading, art. 389, declares "an interventor or interpleader to be a demand by which a third person requires to be permitted to become a party in a suit between other persons ; either by joining the plaintiff in claiming the same thing or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff." Art.'390, "In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit." This we suppose must be a direct interest by which the intervening party is to obtain immediate gain, or suffer loss by the judgment, which may be rendered between the original parties; otherwise the strange anomaly would be introduced into our jurisprudence, of suffering an accumulation of suits in all instances where doubts might be entertained, or enter into the ima-

gination of subsequent plaintiffs, that a defendant against whom a previous action was under prosecution, might not have property sufficient to discharge all his debts. For as the first judgment obtained might give a preference to the person who should obtain it, all subsequent suitors down to the last would have an indirect interest in defeating the action of the first. This certainly was not the intention of our legislators. The rights of different creditors are to be examined in concurring only in cases of actual insolvency, either by a voluntary or forced surrender on the part of a debtor.

The rights of different creditors are to be examined in concurrence only in cases of actual insolvency, either by a voluntary or forced surrender on the part of a debtor.

It is true, that in cases of attachments, a contention and scuffle, for the property of the debtor, takes place among the attaching creditors, very similar to that which occurs in a *concurso*; but the rules by which these two species of judicial proceedings are governed, differ from each other. In relation to legal procedures against debtors not known to be insolvent, no sound distinction exists between suits prosecuted in the ordinary mode by citation, and those which are pursued by attachment. We therefore conclude that

No distinction exists between suits prosecuted in the ordinary mode by citation, and those which are pursued by attachment.

the intervening parties had no right to inter-
fere in the manner by them attempted in the
present case, and that their petition ought
to have been rejected in the first instance;
and here deserves no further notice.

The first objection made on the part of the defendant, to the correctness of the proceedings which took place in the court below, is to the permission awarded to the plaintiffs to amend their petition. His counsel insists that this amendment was illegally permitted on two grounds. 1. That it changed the nature of the action. 2. That according to the Code of Practice amendments are not allowable until after issue joined. As to the first of these grounds it is wholly untenable. The suit was brought on a bill of exchange, and in declaring on it, a mistake was made as to the amount for which it had been drawn. An amendment by which this mistake is rectified, most clearly produces no change in the nature of the action. The second ground of defence assumed against the admissibility of this amendment, appears so novel, that it might be well passed unnoticed, were it not for the indefinite manner in which the subject of amendment is treated by the

In a suit upon a bill of exchange an amendment, changing the amount of the bill, is not altering the nature of the suit.

Code of Practice. It begins by stating, art. 419. "After issue joined the plaintiff may, with the leave of the court, amend his original petition," &c. As no proviso is made for amendments previous to the *contestatio lites ;* it is contended that they are excluded from our practical jurisprudence. Previous to the promulgation of the Code of Practice, a court in the exercise of its discretion could allow amendments to a petition before issue joined, and such right of amendment awarded by law is certainly more reasonable, than that in virtue of which a petition is permitted to amend after a *contestatio lites.* It is impossible to believe that the legislature by the grant of a right, less just and reasonable, intended to abrogate one more fully sanctioned by a convenient, correct, and reasonable mode of judicial proceedings. The provisions of this *art.* of the *Code*, do not in our opinion present a case to which the maxim *expressio unius, est exclusio alterius*, is applicable. The amendment of the petition in the present suit was therefore properly allowed.

Amendments may be allowed after issue joined

The only bill of exceptions in the cause which requires examination, according to the

Eastern District.
*May*, 1830.

GASQUET & AL.
*vs.*
JOHNSON & AL.

opinion which we have formed of it, is that which relates to the rejection of the testimony of the notary public in Nashville, taken by interrogatories. It appears that the commissioner who was authorized to take the testimony of the witness, and certify his answers to the interrogatories which had been proprounded by both parties to the suit, through the agency of their attorneys, gave notice to the defendant of the time and place where the examination would take place. The certificate of the commissioner that the deposition of the witness was made under oath, and duly subscribed by the deponent, bears date on the twenty-eight of September 1829, but refers to the caption of the proceeding for the time and place, at which his testimony was taken ; which seems to have been on the twenty-fifth of the same month, three days previous to the period at which the defendant had notice to attend. In consequence of this apparent irregularity in taking the testimony of the witness, it was rejected in the court below. We think this procceding was erroneous. According to the rules prescribed by our Code of Practice, when a witness is to be examined by commission on

Eastern District.
*May,* 1830.

GASQUET & AL.
*vs.*
JOHNSON & AL.

When a witness is to be examined on interrogatories, if an opportunity, as pointed out by law, be given to the adverse party to file cross interrogatories, notice of the time and place of taking the answers is not required. Therefore if the commissioner give an erroneous one, the mistake will not be fatal.

interrogatories, if an oportunity as pointed out by law be given to the adverse party to file cross interrogatories, notice of the time and place of taking the answers is not required. See *art.* of the C. P. from 426 to 430.

In the present instance, interrogatories were filed on the part of the defendant, and answered by the witness, and should it be admitted that the examination took place on a day different from that mentioned in the notice to the defendant, this circumstance ought not to prejudice the plaintiffs.

The notice was an act of mere supererogation on the part of the commissioner, and cannot do injury to those things which were legally done. But by a comparison of the date of the certificate, with that of the caption, it is probable that the latter was put down in error as being the twenty-fifth of the month, instead of the twenty-eight.

Admitting however the legality of the manner in which the commission was executed; it is contended that the testimony does not prove due notice of the dishonor of his bill was given to the drawer, the present defendant. The deposition or answers to the interrogators, seems to have

been written by the notary himself. After stating that he presented the bill of exchange to the drawers for acceptance, on the eleventh of June 1829, and their refusal to accept; he proceeds thus: " whereupon, I did as notary public, on the said eleventh of June, one thousand eight hundred and twenty-nine, enter protest against the drawer, &c. and gave notice thereof to said James J. Johnston, drawer, &c." Now according to a sound grammatical interpretation of this sentence, it is evident that notice was given to the drawer of the bill on the same day of presentation and protest, and this is certainly legal notice. This testimony admitted makes the case clear in favor of the plaintiffs, and renders unnecessary any further examination.

It is therefore ordered, adjudged and decreed, that the judgment of the court be affirmed with costs.