# Commonwealth, For Use and Benefit of Livingston Graded School, et al. v. First State Bank of Livingston et al.

(Decided Nov. 3, 1933.)

WILLIAMS & DENNEY for appellants.

B. J. BETHURUM and G. MURRAY SMITH for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

On September 12, 1931, the board of education of the Livingston Graded School arranged with the First State Bank of Livingston to act as depository for its school funds and, pursuant to such arrangement and to secure indemnity for the latter's proper accounting and payment of the school funds so deposited with it, took from the bank, in the name of the commonwealth of Kentucky for the use and benefit of the Livingston Graded School, a depository bond, signed by its presi-

dent and vice president as sureties, and which in its terms and provisions is as follows:

"Department of Education
Commonwealth of Kentucky
Public School Funds
Bond of Depository

"Of the Livingston Graded School Board of Education:

"We, A. B. Humble, principal, and L. H. Davis, and R. G. Webb, sureties, do hereby acknowledge ourselves jointly and severally indebted to the Commonwealth of Kentucky in the penal sum of Two Thousand Dollars ($2,000.00), that A. B. Humble, Cashier, First State Bank of Livingston, Kentucky, as Depository of Livingston Graded School Board of Education shall well and truly discharge the duties of said office according to law, receive and deposit all funds offered it for such purpose by the Livingston Graded School Board of Education or its treasurer, or the legally authorized agent or either, account for and pay over all moneys to parties legally entitled thereto on the properly drawn warrant of the Livingston Graded School Board of Education and/or on the properly drawn check of the treasurer of said Board of Education, for a one year term beginning July 1, 1931 and/or until its successor is duly appointed and qualified.

"Witness our hands this 12th day of September, 1931

"First State Bank, Livingston, Ky. Depository
"By A. B. Humble, Cashier
"L. H. Davis, Surety
"R. G. Webb, Surety

"Approved September 22, 1931, by the Livingston School Board of Education.
"Lee Mullins, Chairman.
"M. H. Owens, Secretary.

"Received by the Superintendent of Public Instruction September 23, 1931.

"Approved by the State Board of Education, October 21, 1931.
"W. C. Bell, Chairman."

On the back of said bond was indorsed the affidavits of the sureties as follows:

"Commonwealth of Kentucky, County of Rockcastle, SS.

"I, L. H. Davis, surety on the bond of A. B. Humble, Depository of the Livingston School Board of Education, assert that my unencumbered assets exceed my liabilities in the sum of Five Thousand Dollars ($5,000.00).

"L. H. Davis

"Commonwealth of Kentucky, County of Rockcastle, SS.

"I, R. G. Webb, surety on the bond of A. B. Humble, Depository of the Livingston School Board Board of Education, assert that my unencumbered assets exceed my liabilities in the sum of Five Thousand Dollars ($5,000.00).

"R. G. Webb

"Subscribed and sworn to before me this 21st day of September, 1931, by L. H. Davis and R. G. Webb, sureties on the bond of A. B. Humble, Depository.

"John W. Reese, Notary Public
Rockcastle County, Kentucky."

The said bond was by its terms to remain in full force and effect for one year next after its execution and delivery.

The board of education did further, in order to secure its school funds and as so required by law, take and receive from its treasurer, the coappellant George W. Murphy, a treasurer's bond, secured by the Maryland Casualty Company, in the penal sum of $2,000, effective for the period of two years from date of its execution on September 26, 1930.

In February, 1932, or some five months after the execution by the bank and its officers of the depository bond, the said bank became insolvent and closed its doors and the liquidation of its affairs was turned over to the state banking commissioner, J. R. Dorman, and special banking commissioner, A. B. Humble.

When the bank ceased to do business, the appellant commonwealth of Kentucky, for the use and benefit of the Livingston Graded School (hereinafter for convenience called the plaintiff school), was unable to procure funds with which to meet the school's current expenses and repeatedly demanded of the appellee bank

and its officers, L. H. Davis and R. G. Webb, sureties upon its depository bond, payment of the amount of its deposits to the extent of the penal sum of $2,000 therein provided, but which they refused to pay or any part of same.

It is admitted that at the time of the bank's failure in February, 1932, the plaintiff school had on deposit to its credit with the bank over $2,000.

In July, 1932, the said First State Bank of Livingston and L. H. Davis and R. G. Webb, its officers and sureties upon its depository bond, having defaulted in the performance of their indemnity contract therein recited and having broken the promise of the bond, through its failure and refusal to pay over to the appellant commonwealth of Kentucky, for the use of the said plaintiff, graded school, the sum of their penal liability of $2,000, named in the bond, or any sum, the plaintiff school in the name of the commonwealth of Kentucky instituted its suit in the Rockcastle circuit court against the said First State Bank, L. H. Davis, and R. G. Webb, sureties on the said depository bond.

To this petition, the said defendant bank and the sureties on the bond filed their demurrer, when plaintiff filed amended petition, in which it alleged that the said depository bond was "intended and accepted by the plaintiff and defendants as the bond of the First State Bank as depository; that all the parties in interest intended and accepted the bond as such and that the said bond was not intended by any of the parties thereto to be the bond of A. B. Humble, personally."

Upon submission of the cause upon defendants' demurrer to the petition and the petition as amended, the demurrer was sustained and, plaintiff declining to plead further, the petition was dismissed, to which ruling of the court the plaintiff school objected and excepted and in part prosecutes this appeal.

It is further disclosed by the record that upon the filing of plaintiff's petition on its depository bond against the defendant bank and the sureties thereon, and before any defense was made thereto, D. W. Hammack, Starnes Freeman, Beulah Black, Josephine Dickerson, and Bertie Rice, all teachers employed by the plaintiff school, filed their intervening petition in said

action against the plaintiff and cross-petition against George W. Murphy, as treasurer of the school, and the Maryland Casualty Company, surety on his treasurer's bond, to recover the amount of the unpaid salaries alleged owing them by the plaintiff school by subjecting its recovery on the depository bond thereto. The court, having considered plaintiff's motion to strike and also its demurrer to the intervening petition and cross-petition of the interveners D. W. Hammack and others, overruled the same, and, plaintiff declining to plead further, adjudged that the intervening petitioners recover from the plaintiff Livingston Graded School Board of Education judgment for the amounts sought by their petition, to all of which the plaintiff board objected and excepted. Also, the cross-defendants, George W. Murphy and his bondsman, the Maryland Casualty Company, filed their demurrer to the intervening petition and cross-petition of Hammack and others against them and without waiving same, filed their answer thereto, denying that by reason of their execution of the said treasurer's bond, or by reason of said undertaking and Murphy's qualification as treasurer of said school, he or his surety was responsible for the said sum of $2,000 coming into his hands and so deposited as treasurer; denied that the defendants or either of them had breached his treasurer's bond signed by them; denied that the intervening and cross-petitioners were entitled by lien or otherwise to the funds claimed and sued for by the plaintiffs in this action upon the depository bond or that they had a lien under the law on said funds, or that the intervening petitioners and cross-petitioners were proper persons or parties to said action.

To this answer, the intervening petitioners and cross-petitioners demurred, upon the ground that cross-defendant's answer stated no defense thereto nor reason why judgment should not be rendered against them.

Upon final submission of the whole cause for judgment, the court adjudged that the demurrer of defendants to plaintiff school's petition and the petition as amended be sustained and, plaintiff having declined to plead further, that its petition be dismissed, to which rulings the plaintiffs excepted and prayed an appeal which was granted. Further, it adjudged that the demurrers of the coappellant treasurer, George W. Mur-

phy, and his surety, the Maryland Casualty Company, to the intervening petition of D. W. Hammack and others, be overruled and that interveners' demurrer to the answer of cross-defendants Murphy and his bondsman be sustained and to which rulings Murphy, and his bondsman, the Maryland Casualty Company, objected and excepted, and, declining to plead further, it was thereupon adjudged that the said interveners recover from appellants, the treasurer, George W. Murphy, and said bonding company the sum of $2,000, the penalty mentioned in Murphy's bond, to which ruling the said treasurer, George W. Murphy, and the Maryland Casualty Company, objected and excepted and prayed an appeal, which was granted.

There is thus presented by this appeal, prosecuted by the commonwealth of Kentucky, for the use and benefit of the Livingston Graded School, as plaintiff and George W. Murphy, treasurer, and the Maryland Casualty Company, his surety, cross-defendants in the action below, for our review the correctness of the lower court's complained of rulings in sustaining the defendant State Bank of Livingston's demurrer to the plaintiff school's petition, seeking recovery against it upon its depository bond; also, the correctness of the court's judgment in overruling its motion to strike and demurrer to the intervening petition and cross-petition of the appellee interveners and in also overruling the demurrer of the cross-defendants, George W. Murphy and his bondsman, the Maryland Casualty Company, here coappellants, to said intervening petition and in sustaining interveners' demurrer to said appellants' answer to their petition and cross-petition and in adjudging that the interveners recover in said action judgment upon their intervening petition against the plaintiff school and also upon their cross-petition against the coappellants, Murphy and his bondsman, the penal sum of their treasurer's bond in the sum of $2,000 by them made for the use and benefit of the plaintiff school and in adjudging the interveners entitled to a lien thereon.

We will now undertake to dispose of these questions thus presented in the order named, first among which comes the contention of the appellant school that the court erred in sustaining the demurrer of the appellee bank and its officers, Davis and Webb, its sureties,

to its petition seeking recovery against them of the penal sum of their depository bond executed plaintiff.

It appears by the briefs of counsel that the lower court's action in so adjudging was based upon its conclusion that the depository bond in question was not in fact the bond of the bank as principal therein, but rather was that of A. B. Humble, its cashier, because he was named as principal therein. It is true that the language of the bond is that "A. B. Humble, principal, and L. H. Davis and R. G. Webb, sureties, hereby acknowledge ourselves * * * indebted to the Commonwealth of Kentucky in the penal sum of $2,000, that A. B. Humble, Cashier, First State Bank of Livingston, Kentucky, as Depository of Livingston Graded School Board of Education shall well and truly discharge the duties of·said office. * * *'' Also, it likewise so appears by the affidavits indorsed upon the back of said bond, where it is recited again that the said Davis and Webb are sureties on the bond of A. B. Humble, described as depository of the said school, yet on the other hand the bond is signed and executed as the bond of and in the name of the First State Bank, Livingston, Ky., depository, by A. H. Humble, cashier, and does further, by its express terms; undertake to receive and deposit all funds offered it by the said appellant graded school or its treasurer and to account for and pay over all moneys so received, on the proper warrants or checks of the treasurer of the said board of education. Also, it is admitted that upon the faith of this arrangement between the bank and the school, whereby the depository bond was executed it in the name of the bank, by its cashier, and signed by its president and vice president, Davis and Webb, respectively, as sureties thereon, the said school, in reliance upon the security thereby furnished it under the depository bond for the proper accounting of its school funds, proceeded to deposit them with the bank, where they were received on deposit by the bank and its officers, with the full knowledge that the same were being so deposited with it as the school's depository and upon the faith of the indemnifying depository bond executed the school. The bank clearly, merely by its act in receiving the school's deposits, became liable to the depositor school for its repayment, independently of any additional liability by reason of the bond, yet there can be no doubt that it

was within the legal rights of the bank to give and of the school board to demand and receive the further security of a bond from the bank before intrusting it with funds and to further secure the due and proper payment of its deposits then on hand or to be made with it by securing the promise and agreement of the depository bank's officers— given in consideration of the expected profit and benefit to be derived by them through their bank's securing the school deposit account—to add their further personal liability as sureties upon the bank's covenant, both implied and expressed by its depository bond, to duly and properly account for and turn over the school funds so deposited and received by it to the school board thus indemnified and rightly entitled thereto.

It is alleged in the appellant schools' amended petition that the bond in question was intended to be and accepted by the board from the bank as being its depository bond, upon the faith of which it made its deposits with the bank, when signed as such in the name of the bank, as its depository, by its cashier for it, and was by neither the plaintiff school nor the defendant bank and its sureties accepted or considered as the personal bond of the bank's cashier, A. B. Humble. Such was the allegation of the amended petition, to which defendants filed demurrer. However, the latter contend that its allegation was not admitted by demurrer, because, they contend, the language and description of the principal appearing in the bond itself, which was made a part of the pleadings, refutes such an allegation. However, we cannot agree with this claim of the appellees, when the depository bond was delivered to the plaintiff signed in the name of the bank and its sureties, as such, under the circumstances shown. It was then beyond control of the sureties so signing it as such and required nothing further to complete the contract, even had not the depository bank so signed it. Galbraith et al. v. Shores-Mueller Co., 178 Ky. 688, 199 S. W. 779; Ky. Cent. L. & A. Ins. Co. v. Pemberton, 212 Ky. 510, 279 S. W. 968. The liability of the bank did not then depend upon its signature to the bond. As stated, it was already liable as the receiving bank for the school's deposits made with it and its joining in the bond by way of adding the additional security therefor of its officers signing it would add nothing to its duty to make payment on the due demand of the depositor. U. S. F. & G. Co. v.

Board of Education, 228 Ky. 426, 15 S. W. (2d) 255, 256. As said in the latter case:

"The surety is bound by the bond when it is delivered with the intent that it should constitute a contract, and the absence of the principal's signature does not affect the obligation of either the principal or the surety. Star Grocery Co. v. Bradford, 70 W. Va. 496, 74 S. E. 509, 39 L. R. A. (N. S.) 184; Brown v. Melloon, 170 Iowa, 49, 152 N. W. 75, Ann. Cas. 1917C, 1070.

"The surety is subrogated to the rights of the obligee against the bank, and that right is not affected by the omission of the bank to add its signature to the bond. Allen v. Jenkins [157 Ky. 415, 163 S. W. 234], supra."

But the learned counsel for the appellee sureties upon the bank's bond, Davis and Webb, contends in his brief that the lower court's judgment in sustaining their demurrer to plaintiff's petition was not based so much upon the contention made, that it was not the bond of the bank but of A. B. Humble, its cashier, but mainly rested its decision, in so holding upon the ground that, as the school board was then without lawful authority to designate a depository for its school funds, its act in so doing was null and void and, further, that the depository bond taken of the bank, by reason of its unlawful designation as depository was only an incident thereto and was also void. In support of this position it contends that the court's action in sustaining the defendant bank's demurrer to plaintiff's petition finds ample support therefor in the rule and reason therefor announced by this court in the recent cases of Taylor, Drainage Commissioner, v. Fidelity & Casualty Co. of N. Y. 246 Ky. 598, 55 S. W. (2d) 410, and Edwards v. Logan County, 244 Ky. 296, 50 S. W. (2d) 83, but upon a review of the doctrine of these cases based upon entirely different facts we find this claim to be unsupported.

The facts shown to exist in the Taylor Case very clearly distinguishes it from those of the instant one and therefore makes inapplicable the rule therein announced, which we fully approve, to the materially different facts of the case at bar. In the Taylor Case, the suit was filed against the county treasurer, who was ex

officio treasurer of the drainage commission fund, seeking recovery upon the treasurer's bond of drainage funds deposited and lost by her in the Bank of Calhoun. The defense was made that the treasurer was not liable for the loss because, in making the deposit in this bank, she had acted under the order of the drainage commissioner, directing that its funds be deposited by the treasurer in such bank. The court therein held that such answer presented no valid defense, as an officer or board of a governmental division of state has no authority, independently of statute, to designate a depository of such agency's funds, and, therefore, there being no such authority given the drainage commissioner to designate a depository of the district's funds, its order to such effect was ultra vires and afforded the treasurer acting thereupon no protection or exemption from her official liability for loss of the funds deposited with such depository bank and therefore adjudged the treasurer and her bondsman should account for the loss. Whereas, in the case of Edwards v. Logan County, 244 Ky. 296, 50 S. W. (2d) 83, the court therein reached a different conclusion, holding that Edwards, as treasurer of Logan county, was not liable for the loss of the county's funds deposited upon the court's order in a later failing bank, by reason of its finding that the said fiscal court of the county, in so directing its treasurer to deposit the county's funds in the bank designated by it, had ample statutory authority to designate a depository for its funds and, therefore, the treasurer, in acting upon its valid order, was prima facie relieved thereby of liability of accounting for the funds on failure of the designated depository. Here, however, the treasurer, Murphy, was not sued by the plaintiff school upon his treasurer's bond for the recovery of the school funds deposited (and lost) by the treasurer in the appellee bank, through acting upon its ultra vires order or by reason of its having been designated by the school board a depository of the school funds—when it was without authority to designate a depository therefor, as it is conceded, since this authority was not vested in the school board until the enactment of chapter 74 of the 1932 Acts of the General Assembly—and therefore the board's effort to designate a depository would likely prove ineffectual (a question, however, which is not here before us and which we do not decide) for exonerating the appellant treasurer from liability upon

his treasurer's bond when sued by the board for the loss of its school funds resulting from such deposits made upon the board's then void order. Rather, the instant case is one where the school board is not relying upon a claimed right to designate a depository, but is suing the bank upon the depository bond, executed and delivered directly by the bank and its sureties, to it and whereby they therein contracted to safeguard and indemnify the school board against the loss of its school funds deposited with it to the extent of the penal sum of $2,000. Clearly, the school board's action, in taking this additional promise and assurance of the bank and its officers for the protection of its school fund deposits to be made with it on the faith of such depository bond, was not an invalid act or contract nor did it exceed its authority in seeking of the bank such protection of its school funds. It is one thing to officially designate a bank as a depository and quite a different matter to take from it security for deposits of public funds made with it. There here existed further ample consideration for the bank's president and vice president, Davis and Webb, individually, signing their bank's depository bond, in the advantage and benefit they expected to derive from so doing, through the bank's handling of the school funds thereby caused to be deposited with it under such arrangement. The making of the depository bond, therefore, was an independent and valid contract between the school board and the appellees and was clearly not a mere incident to the invalid act of the school board, if such it was, in attempting to designate, if it did, the bank as a depository for its funds when not possessing statutory authority therefor. The bank was shown to have received deposits from the school board, and it is safe to assume these deposits were made by reason of the board's reliance upon the depository bond given it, and that at the time of its failure, it held on deposit to the credit of the school more than $2,000, which the sureties upon the bond refused to pay under the specious pleas made that the bank was not the principal in the bond and that the bond itself was void as being but an incident to the alleged void action of the board in attempting to designate it as its depository. We cannot consent to the sureties evading their liability upon the bond, clearly and legally contracted by them, under the frivolous plea and dissembling subterfuge that the depository bond, under and

by reason of which they secured deposit of the school's funds, with it was a void undertaking, because the plaintiff board of education could not then designate for want of statutory authority the bank as its depository. To exonerate appellee sureties from liability as such upon the depository bond upon such pleas would result in permitting them to unjustly enrich themselves through the artifice of executing a security, held out as valid, thereby securing the deposit and handling of the school's funds, and then, under an ultra vires plea of the board's lack of authority, in fraudulent violation of the express terms and undertaking of their exectued bond, repudiate and escape their liability expressly and fairly assumed thereunder to account for and pay over to the school board its funds so received on deposit. We are, therefore, for the reasons stated, led to conclude that the trial court prejudicially erred in sustaining appellees' demurrer to plaintiff school's petition, as failing to state a cause of action against them, whether such ruling was by the court rested upon the one ground or the other, each hereinabove discussed and alike pronounced unsound.

The appellant school board, its treasurer, and his bondsman further complain that the court erred in overruling its motion to strike and their demurrers to the intervening petition and cross-petition. It is here to be noted that this action was a suit by the school board upon the depository bond of the bank and its sureties to recover the penal sum thereof, by reason of the loss of its school funds deposited in the later closed appellee bank. The interveners, by their intervening petition and cross-petition, seek to become parties to this action, both for recovering judgment against the school board for the amount of their unpaid salaries therein alleged owing them and also to subject to the satisfaction of their claims any recovery secured by the plaintiff school board, against the defendant bank and sureties on its depository bond, as well as by their cross-petition to have the school board further adjudged a recovery against its treasurer, the appellant Murphy and his surety, upon his treasurer's bond and to likewise have their salary claims declared a lien upon any recovery effected and that it be adjudged paid the interveners. The appellants' contention in this brings us to consider the question of whether the plea set up in the intervening

petition and cross-petition was here properly sustained by the trial court through its overruling of the appellants' motion and demurrers thereto.

The right of a third person to intervene in a pending action is statutory and is by the statute limited to actions or proceedings "for the recovery of real or personal property or for the subjection thereof to a demand of the plaintiff under a judgment or other lien," and may be exercised by persons "claiming aright to, or interest in, the property or its proceeds." Civ. Code Prac., sec. 29. Newman's Pleading and Practice, sec. 187, in part states:

"This section does not embrace actions upon contracts, express or implied, for the recovery of money only. So that in an action for the recovery of a debt as owing from the defendant to the plaintiff, no third person could upon his own application be made a party to the action."

Again, in the case of Vanmeter v. Fidelity Trust & Safety Vault Co., 107 Ky. 108, 53 S. W. 10, 11, 21 Ky. Law Rep. 744, this court, in construing and applying this section of the Code, said:

"But do the interveners answer the description given by the statute of persons who may exercise such right? They set up no claim whatever to the property against which appellee sought to enforce its lien. They did claim, it is true, to be entitled to collect the rent from their sons, but their petition shows no right to or interest in the personal property sought to be subjected to the payment of appellee's claim. * * * The rule for the construction of similar statutes has been frequently laid down by the courts as to what interest or right is necessary to be shown to authorize an intervention. Said the supreme court of Louisiana in Gasquet v. Johnson, 1 La. 431: 'This, we suppose, must be a direct interest, by which the intervening party is to obtain immediate gain or suffer loss by the judgment which may be rendered between the original parties. * * *' In Horn v. Volcano Water Co., 13 Cal. 62 [73 Am. Dec. 569], Judge Field, delivering the opinion of the court, said: 'The interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and

immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. * * * To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in suit, or a claim to or lien upon the property, or some part thereof, which is the subject of litigation. No such claim or lien is asserted in the petition of Rawle, and his right to intervene in consequence thereof fails.' See, also, Smith v. Gale, 144 U. S. 509, 12 S. Ct. 674 [36 L. Ed. 521].''

The interveners here had no lien whatsoever upon the funds sought to be recovered by the plaintiff of the defendants in this action, but had only the right of suit against the board upon their teaching contracts had with it to recover such amounts as might be shown due them thereunder. Their claim bore no direct connection with the fund sought to be recovered by the plaintiff upon the bond or such direct interest therein as would enable the interveners to obtain immediate gain or suffer loss by such judgment as might be rendered between the original parties. Measuring the interveners' right to here intervene by the clearly applicable and well settled rule above announced, it must needs follow that the lower court erred in overruling appellant's motion to strike and demurrers thereto and in sustaining interveners' demurrer to the answer of the appellant treasurer and his bondsman, alleging that the intervening petition and cross-petition against them were not germane to the issues made by the pleadings in the original action. From this, it further results that the court erred in here entertaining jurisdiction of the intervening petition and cross-petition and in adjudging thereon recovery by interveners both against the plaintiff school board and also against the appellant treasurer and his bondsman.

Therefore, in view of these conclusions reached by us and the lower court's ruling and judgment being not in accord and harmony therewith, its judgment is reversed and the cause remanded for a new trial consistent with this opinion.