## Wayne, By, etc. v. Brumley, et al.

(Decided February 1, 1921.)

### Appeal from Daviess Circuit Court.

1. Judgment—After-Born Remaindermen.—A judgment in an action by an executor to sell land for the payment of debts, specific devises, and costs of administration, is not void as to an after-born remainderman where all the jurisdictional facts appear upon the face of the papers.

2. Judgment—Collateral Attack.—Such judgment being only voidable, can not be made the subject of a collateral attack for fraud by such after-born remaindermen.

3. Judgment—Collateral Attack.—An action, wherein it is alleged that the plaintiff is the owner of an undivided interest in a given tract of land, and the defendant answers relying upon a judgment of court as his source of title, and the plaintiff, for the first time, in his reply charges that the judgment in the action relied upon was obtained by fraud, is a collateral attack and can not be maintained.

4. Judgment—Collateral Attack.—A direct attack on a judgment is an action, motion or proceeding for the specific and only purpose of setting aside or annulling the judgment of a court; and any action which has for its purpose any relief other than the setting aside of the judgment is a collateral attack.

5. Judgment—Remaindermen.—The creditors of a decedent can not be indefinitely postponed in the collection of their debts because

there may be in the future additional remaindermen under the terms of a will; and in such action the remaindermen in existence will be considered as representing all remaindermen of the same class who may thereafter come into existence, and such representative not then in esse is bound by the judgment.

GEORGE W. JOLLY for appellant.

LOUIS I. IGLEHEART for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In 1899 Mary L. Wayne died in Daviess county, leaving a will in which she devised all of her property, subject to the payment of her debts and of certain specific devises, to Mary M. Wayne, the wife of her son, J. Z. Wayne, for and during her natural life, and in remainder to their children; but further providing that if her son, J. Z. Wayne, should survive his said wife, to him for his life and in remainder to his children.

Her daughter-in-law, Mary M. Wayne, died a short time after the testatrix, whereupon the latter clause referred to became effective. At the time the will was written, and at the death of the testatrix and of Mary M. Wayne, the latter and her husband had only two children, both infants.

In the will of Mary L. Wayne her son, J. Z. Wayne, was nominated as executor, and after her death the will was probated and he qualified as such.

The decedent, Mary L. Wayne, left very little, if any, personal property, and her estate consisted almost entirely of a tract of 108 acres of land in Daviess county, upon which there was an unpaid mortgage debt of $1,500, and she in her will made specific devises amounting to $800.

After the death of his wife, J. Z. Wayne married again about the year 1903, and as a result of this union the appellant, Charles R. Wayne, was born on November 8, 1904.

Prior to his birth, however, and in 1903, J. Z. Wayne, as executor, brought a suit to settle the estate, in which action the creditors and all devisees, including the two infant children by his first wife, were made defendants, and in that action he alleged that it would be necessary to sell the tract of 108 acres of land for the purpose of paying the debts, specific devises and costs of administration,

and that the tract of 108 acres could not be divided without materially impairing its value and the value of the several interests therein.

On October 20, 1903, a judgment was entered in that action directing a sale of the whole of the 108 acres of land and adjudging the same to be indivisible, and pursuant thereto the master commissioner on the 16th day of November, 1903, sold this land, and J. Z. Wayne became the purchaser at the price of $7,400, although it had been appraised before the sale at only $5,000, and on the 19th of December, 1903, an order was entered confirming the report of sale.

All of these things took place before the birth of appellant, Charles R. Wayne, which, as stated, was on the 8th of November, 1904.

On the 12th of November, 1904, an order was entered in the action showing that J. Z. Wayne, the purchaser at the sale, and who had executed the purchase money bonds, had assigned in writing the benefit of his bid to J. S. Brumley, and thereafter, Brumley having satisfied the purchase money bonds, a deed for the land was made to him and the proceeds of the sale were distributed under orders of the court.

That record further shows that before the final distribution of the fund J. Z. Wayne had qualified as the statutory guardian of the appellant, Charles R. Wayne, and as such appeared in that action and executed the additional bond required before withdrawing the fund.

On the 4th of January, 1918, the infant appellant, Charles R. Wayne, by J. P. Wayne, his half brother as next friend, brought this action against J. S. Brumley.

In his petition it is alleged that he is the son of J. Z. Wayne and the grandson of Mary L. Wayne, and that under the will of the latter he was the owner of and entitled to the possession of an undivided one-third interest in and to the tract of 108 acres; that Brumley had theretofore acquired the interest of J. Z. Wayne and his two children by his first marriage, J. P. and Francis E. Wayne, and "prays judgment that his right to an undivided one-third interest in said tract of 108 acres more or less be established and adjudged to him and that his title and interest thereto be quieted."

The defendant, Brumley, answered, setting up at length and in great detail the pendency of the action to settle the estate of Mary L. Wayne and of all orders, judgments and steps taken therein, and pleading affirma-

tively that all the devisees and creditors of Mary L.
Wayne were parties thereto, including the two infant de-
fendants who were children of J. Z. Wayne by his first
wife; that the said two infants had in that action a guar-
dian *ad litem* appointed for them, who had represented
them and filed his report as required by law; that after
the birth of the infant, Charles R. Wayne, pending that
action, J. Z. Wayne, the father of said infant, had quali-
fied as his statutory guardian and had appeared in that
action and entered his appearance by executing bond
therein and withdrawing as such guardian the proceeds
of the sale which were coming to said infant, and that
said statutory guardian and the subsequent statutory
guardian of the appellant had ever since had said fund
and loaned the same.

He also alleged that in that action it had been
averred by the executor in his petition that the 108 acre
tract of land was all the property owned by Mary L.
Wayne at her death and that it was necessary for the
payment of her debts, the specific devises, and cost of ad-
ministration, to sell the same, and that the same could
not be divided without materially impairing its value and
the value of the several interests therein; that in that ac-
tion depositions were taken on interrogatories as requir-
ed by law which showed that the land was indivisible, and
the court in accordance therewith ordered a sale of the
whole tract of land, and he relied upon the judgment and
sale and other proceedings in that action, and the title he
acquired thereunder, as a complete defense to the plain-
tiff's action.

To that answer the plaintiff replied denying that the
tract of 108 acres could not be divided without materially
impairing its value or the value of the several interests
therein, and denying that a sale of the whole was neces-
sary to pay the debts, and denying that the infant plain-
tiff was ever made a party to said action.

In a separate paragraph of the reply it is alleged that
the judgment in that action was procured by fraud, covin,
misrepresentation and perjury and subornation of per-
jury committed by the defendant, Brumley, who, it is al-
leged, lived at that time in the immediate neighborhood
of said land and was well acquainted therewith and knew
that said land was in fact susceptible of division without
impairing its value; and that said Brumley had testified
falsely in that action that the land was not susceptible of
division, knowing the same to be untrue; and had further-

more fraudulently procured one C. A. O'Bryan to swear falsely to the same thing, knowing at the time such evidence was false; and so falsely testified and procured O'Bryan to testify for the fraudulent purpose of procuring the sale of the whole of said land that he might himself buy it.

It is further alleged that Brumley fraudulently procured J. Z. Wayne, the executor, to participate in securing said judgment of sale by plying the said J. Z. Wayne with whiskey until he had rendered him incompetent to attend to the business; and that said J. Z. Wayne did fraudulently participate in and combine with Brumley, and aided and assisted him to procure said judgment to deprive the remaindermen of their interest in said land, and that the purchase by J. Z. Wayne at the master commissioner's sale, and the confirmation thereof, and the assignment of the bid to Brumley, were each a part of the fraudulent combination entered into by the parties; and that all steps, orders and judgments therein looking to such sale were had and made pursuant to the fraudulent combination between Brumley and J. Z. Wayne.

In the prayer of his reply for the first time he asks that "all judgments, steps and orders made in that action looking to the sale of said land, and the confirmation thereof, and the distribution of the proceeds thereof, be adjudged to have been procured by fraud and held void altogether, or if that can not be done, that the same be adjudged void as to the infant plaintiff, and his rights and interests in said land be established."

To this reply Brumley rejoined, putting in issue all the material facts alleged.

And this is the substance of the pleadings in this action.

Three questions are presented for decision: (1) was the judgment of sale void or only voidable? (2) If it was merely voidable is this a direct or a collateral attack upon it? And if only a collateral attack, can the action be maintained? (3) Was appellant a party to that action, and if not, is he bound by the judgment therein under the doctrine of representation?

(1) It will be seen from our recitation of the contents of the pleadings that there is no claim that the court did not have jurisdiction, or that any jurisdictional fact did not appear upon the face of the papers in the old suit. On the contrary, it is affirmatively shown that every requisite jurisdictional fact appeared; that the decedent

died a resident of that county; that the executor qualified; that the land was in that county; that all interested parties then in existence were before the court; that a guardian *ad litem* was appointed for each of the infants and answered for them; that the petition alleged, and the evidence showed, that the land could not be divided without materially impairing its value and the value of the several interests therein; and from this it is apparent that if the judgment was void as to appellant, it was only for the reason that he was not then *in esse* and consequently not a party thereto, as is claimed, and whether he was such party by representation will be hereafter considered.

(2) Under the allegations of the reply, therefore, the judgment was only voidable if it was obtained in consequence of a fraudulent combination between Brumley and J. Z. Wayne as alleged; and being only voidable, is the attack which is here made upon it a direct or only a collateral attack?

The petition in this case alleged that the plaintiff was the owner of a one-third undivided interest in the tract of land, and prayed that his title thereto be quieted and his right established, and wholly ignored the existence of the judgment in the old suit.

The answer then relied upon the judgment in the old suit and the title which Brumley acquired thereunder as a defense to the plaintiff's claim; and then in the reply for the first time the plaintiff, in avoidance of the defendant's claim under the judgment, asserts that the judgment which is the basis of the defendant's title was procured by fraud.

That this is a collateral and not a direct attack upon the judgment is not an open question in this state.

In the case of Crider v. Sutherland, 186 Ky. 7, Crider brought suit against Sutherland to recover a small tract of land; the defendant answered asserting title to plaintiff's former interest therein under a commissioner's deed.

Plaintiff replied that he had been adjudged and was of unsound mind at the time of the rendition of the judgment which was the basis of the commissioner's deed, and the lower court held that this was a collateral attack upon the judgment and therefore sustained a demurrer to the reply, and that judgment was affirmed, this court saying:

"Where the absence of the jurisdictional fact does not affirmatively appear in the record in which the judgment was rendered, the proper remedy is to bring a suit for the purpose of setting aside the judgment, or to resort to other forms of direct attack."

A direct attack is an action or a motion for the specific and only purpose of setting aside. or annulling the judgment of a court; and any action which has for its purpose the accomplishment of any relief other than the setting aside of the judgment is not a direct attack.

Dennis v. Alves, 132 Ky. 345, was an action seeking to have plaintiff adjudged the owner of and entitled to the possession of a tract of land; the defendants answered claiming the plaintiff's title under a judgment of court, and this court, in a response to a petition for a rehearing, in 117 S. W. 287 (not elsewhere printed), said:

"A judgment is directly attacked when it is called in question by a motion or proceeding for a new trial, by an appeal to a higher court, or by an action to set it aside for fraud, or any like procedure; but in this case the judgment constitutes a part of appellees' chain of title to the land in question, and, when pleaded by them, the appellants respond that the judgment is void for want of jurisdiction. This is a collateral attack, and, unless the judgment is void for want of jurisdiction, either of the subject-matter or of the persons involved in the litigation, the attack is in vain."

The two cases cited would appear to be conclusive of the fact that the attack upon the judgment in this case is a collateral attack and that it can not be maintained unless the appellant, because of the fact that he was not *in esse* at the time the judgment was entered, is not bound thereby; in other words, as to him the judgment is void unless he was a party or he is bound by the doctrine of representation.

(3) The appellant was not born until after the judgment of sale, until after it was executed, and until after the sale was confirmed, but his half brother and sister were each parties to the action and were each remaindermen and represented in that action the same interest which he would have represented had he been a party.

In this state not only has the executor of a decedent the right to go into court and ask for the sale of the real estate of his testator for the purpose of paying debts and settling the estate but the creditors themselves have that right. It can not be that because there may or may not

be in the future additional remaindermen under the terms of a will, creditors are to be indefinitely postponed in the collection of their debts, and out of these considerations the wise rule has been adopted that remaindermen in existence who are representatives of a class will be considered as representing all of that class who may thereafter come into existence, and that such representative not then *in esse* is likewise bound by the judgment.

An exhaustive note on this subject, clearly and accurately setting forth the doctrine of representation as here announced, will be found in the case of Downey v. Seib. 8 L. R. A. (N. S.) 49.

The judgment is affirmed.