## Gardner, et al. v. Howard.

(Decided February 9, 1923.)

### Appeal from Magoffin Circuit Court.

1. Judgment—Collateral Attack.—A direct attack is an action or motion for the specific and only purpose of setting aside or annulling the judgment of the court, and any action which has for its purpose the accomplishment of any relief other than the setting aside of the judgment is not a direct attack; or conversely stated, a collateral attack is any proceeding which has an independent purpose and contemplates some relief or result other than overthrowing the judgment, even though the overthrowing of the judgment may be necessary to accomplish this result.

2. Judgment—Collateral Attack—Pleading.—The character of an action is determined by what is stated in the body of the petition, considered in connection with the prayer when otherwise it is doubtful; but upon demurrer to a petition, the character of relief sought must be determined by the prayer alone, and the prayer rather than the body of the petition is controlling upon the question of whether the action is a direct or a collateral attack under the above rule.

3. Judgment—Direct Attack.—Where the original petition stated a cause of action for and asked both that a judgment of sale be set aside and for an accounting, the action as begun was a collateral attack; but where, upon demurrer thereto, and before answer, plaintiff by amended petition expressly withdrew so much of the prayer as asked for an accounting and prayed only that the judg-

ment be set aside, the action thereby became a direct attack; and allegations in the petition, relevant only upon an accounting and not withdrawn, are to be treated as surplusage rather than determinative of the character of the action.

4. Insane Persons—Sale of Land of—Process.—The power of a court to sell the land of a lunatic is purely statutory, and unless the statute conferring the power is strictly followed, the sale is void; and service of summons upon the owner in the prescribed manner is a prerequisite to jurisdiction.

5. Insane Person—Process.—Section 53 of the Code prior to its amendment at the 1922 session of the legislature, provided that summons must be served upon a lunatic, and upon the following named persons "if residing in the county:" his committee, father, guardian, wife, or custodian, in the order named; held that "if residing in the county" refers to the county where the lunatic is served in so far as the custodian is concerned, and that where the lunatic had no father, guardian, or wife, and he lived in a county other than that in which the suit was filed, service upon him alone was not a compliance with this section prior to such amendment, in an action by the committee against the lunatic to sell his land for his maintenance under section 489 of the Code; and the court was without jurisdiction to order a sale under such service, and the sale is void.

6. Insane Persons—Sale of Land of.—Ordinarily statutes curing defects in acts done or authorizing the exercise of powers which act retrospectively are valid, provided the legislature originally had authority to confer the powers or authorize the acts, but where the court in which the proceedings were had possessed no jurisdiction, its acts cannot be validated; and the amendment to section 53, supra, enacted at the 1922 session of the legislature, is ineffective in so far as it attempts to validate sales of the lands of lunatics, ordered upon service of summons upon the lunatic alone.

HOBSON & HOBSON and A. FLOYD BYRD for appellants.

E. C. O'REAR, J. W. HOWARD, O'REAR, FOWLER & WALLACE and S. MONROE NICKELL for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

B. F. Gardner, a lunatic, was the owner of 1,256 acres of land in Magoffin county. His committee, Tone Gardner, instituted an action in that county against him and procured a sale of the land under section 489 of the Code, upon the ground that it was necessary to obtain means for his support. At that sale appellee Howard became the purchaser, the sale was confirmed, he paid the purchase price and the land was conveyed to him. After the death of Gardner, appellee procured a quit claim deed

to the land from all of the decedent's heirs except the appellants who filed this action against him attacking the validity of the judgment ordering a sale of the land and the conveyance to him, upon the ground that Gardner was not summoned as required by section 53 of the Code, and that as a consequence the court was without jurisdiction in the matter.

A demurrer was sustained to the petition as amended, and the plaintiffs have appealed from the judgment dismissing the action upon their refusal to plead further.

As counsel agree, it is necessary, before attempting a decision of the ultimate question at issue, to decide whether this is a direct attack upon the validity of the judgment, as appellants contend, or a collateral attack thereon as appellee contends, since if the former no presumptions are to be indulged in favor of the judgment's validity, and even the verity of the record upon which it was entered may be questioned; whereas if the latter, the judgment is presumably valid and will not be declared void unless that fact affirmatively appears from the record.

The rule for determining whether an attack upon a judgment is direct or collateral is thus stated in Wayne v. Brumley, 190 Ky. 488, 227 S. W. 996:

"A direct attack is an action or motion for the specific and only purpose of setting aside or annuling the judgment of a court; and any action which has for its purpose the accomplishment of any relief other than the setting aside of the judgment, is not a direct attack."

In City of Paducah v. Paducah Traction Co., 168 Ky. 198, 181 S. W. 1093, the same rule is conversely stated, thus:

"A collateral attack is any proceeding which has an independent purpose and contemplates some relief or result other than the overthrowing of the judgment, even though the overthrowing of the judgment may be necessary to accomplish this purpose."

Other cases to the same effect, of which there are many, need not be referred to, since counsel agree that the above are correct statements of the law. Their disagreement arises solely out of its application to the allegations of the petition as amended herein.

The original petition in this action, in its first paragraph, states a cause of action for an accounting between plaintiffs and defendants as coparceners, if, as alleged in the second paragraph, the defendant was not properly

summoned and the judgment is void; and the prayer is for both an accounting and that the judgment of sale be declared void. Hence the action as begun was clearly a collateral attack upon the judgment in the prior case, and the question is whether or not plaintiffs thereafter succeeded in converting it into a direct attack, as was plainly their effort.

After a demurrer had been sustained to the original petition, plaintiffs, on the same day of a succeeding term of court, filed two amended petitions, both of which, after expressly withdrawing the first paragraph of the original petition, restate as an amendment to the second paragraph thereof most of the facts contained in the first paragraph, which were unimportant and irrelevant except upon an accounting. Not only are these amendments the same in substance, but the second was filed before there had been any action upon the first, and they conclude with precisely the same prayer, viz.:

"The premises considered, the plaintiffs pray that said judgment of sale and the deed made to defendant Howard be set aside and held for naught, and for a judgment as in the second paragraph of the petition and for all proper relief."

Thereafter a demurrer was sustained to the petition as thus amended, and plaintiffs filed a third amended petition over defendant's objection and exception, which after alleging there was no necessity to sell the land for decedent's support, and that it was then worth more than ten times the amount for which it was sold, is as follows:

"The plaintiffs withdraw the prayer of the second paragraph of their petition and the prayer of their amended petition, and make the prayer of their petition and amended petition to read as follows: 'Plaintiffs pray that this action be consolidated with said action of Tone Gardner, Committee v. B. F. Gardner; that their petition as amended be taken as their answer to said petition and as their exceptions to said sale, and to the depositions taken in said action, and that same be sustained; that said judgment and order and all the proceedings had in said action be set aside and held null and void, and for their costs and for all proper relief.' "

Upon the basis of the fact that this prayer is substituted for the prayer of the petition and "amended petition" (and not amended petitions) is constructed an argument which its author confesses is technical, and it is extremely so, but which he attempts to justify upon the

ground that appellants' right of action results, if at all, from a technical error of procedure.

Before taking up this argument, we think we should say that the error upon which plaintiffs rely, a want of jurisdiction in the court to order a sale of the lunatic's land, is hardly such a technicality as warrants the court in refusing them a hearing upon less than very substantial reasons. And having made this statement, which is certainly true, we find it quite difficult to treat seriously an argument which, upon analysis, amounts to just this: Construing the pleadings against the pleader, the prayer of but one of the two amended petitions was withdrawn, and with either out, the other in precisely the same language remains. Hence we are asked to conclude plaintiffs were practicing a subterfuge and meant nothing whatever by the third amendment, but are still seeking by their pleading as finally amended, just as in their original petition, an accounting as well as to set aside the judgment and sale.

We are quite unable to adopt this view and accept as conclusive against the pleader an evident typographical error, since to do so not only ascribes to the first and second amendment a material difference they do not contain, but also renders the third amendment entirely meaningless, despite its evident purpose. We must therefore consider the petition as finally amended, without reference to any prayer except that contained in the third amendment.

It is quite true, as urged for appellee, that ordinarily the character of an action is determined by what is stated in the body of the petition, considered in connection with the prayer when otherwise it is doubtful; but the character of relief sought must be determined, if not always at least upon demurrer to the petition, by the prayer alone, and hence the prayer rather than the body of the petition, it seems to us, is necessarily controlling upon the question of whether under our rule the action is a direct or a collateral attack, since by that rule, as we have seen, the character of the action depends entirely upon the character of the relief sought.

Plaintiffs by their final prayer, having withdrawn all others, seek only to have this action consolidated with the one in which the sale was ordered, and that their "petition as amended" be taken as their answer, etc., in that action, and that the judgment and all proceedings therein be set aside and held for naught. This, in our judgment,

can not be construed otherwise than as an abandonment of any effort for an accounting, and an election to seek only an annulment of the judgment and proceedings in the old case.

A plaintiff certainly has the right, when before answer his petition is challenged by demurrer, to elect which cause of action he will prosecute, if more than one is stated—whether improperly or not—and to perfect either. Conceding, for the sake of argument, that the petition and the first two amendments stated both a cause of action for an accounting and an annulment of the old judgment, which in our judgment is not true, plaintiffs plainly indicated an election to prosecute only the latter by expressly withdrawing in the last amendment all requests for other relief, and by asking only that this action be consolidated with the one in which the judgment was rendered, and that their petition as amended be taken as their answer in that action.

We are therefore of the opinion that the purpose of the petition as finally amended was solely to annul the judgment of sale, and that as a consequence this action is a direct attack thereon, notwithstanding the fact that in the body of the petition as amended are statements of facts not withdrawn which would be pertinent only upon an accounting, and which must be treated as surplusage rather than as determinative of the character of the action.

It is also insisted the court erred in filing the third amended petition over defendant's objection, upon the ground that it made no reference to the original. While the pleading does not begin with a reference to the petition, as is the usual practice, it contains some four or five references thereto, and indicates wherein and to what extent it supplements and modifies the petition as theretofore amended, and in our judgment the court did not abuse the broad discretion conferred upon him in such matters in permitting this amendment to be filed.

Another insistence is that this is not a direct attack because the heirs of B. F. Gardner other than appellants are not made parties to the action, and that they are necessary parties to such an action. Passing the right of appellees to raise this question by general demurrer, it is yet without merit since it stands admitted, as stated in the petition, that Gardner's other heirs, since his death, have ''sold and conveyed all their interest in said land to the defendant Harris Howard by deed, copy of

which is here filed as part, marked 'X,' and he is now the owner of all of said land except the interest of these plaintiffs.''

This brings us to the main question, which is: Was the service upon the defendant, B. F. Gardner, in the suit by his committee sufficient to give the court jurisdiction to order a sale of the land at which appellee became the purchaser?

No rules are better settled in this state than that the power of a court to sell the land of a person under legal disability is purely statutory; that unless the statute conferring the power is strictly followed, the sale is absolutely void; and that service of summons upon the owner, be he lunatic or infant, in the prescribed manner is a prerequisite to jurisdiction. These rules are so thoroughly established and have been so uniformly observed that we need not cite authorities in support thereof, other than those hereinafter discussed, or take the time to answer any contention except the one that a personal service upon a lunatic alone is all that the statute requires when, as here, the suit is by his committee.

It is conceded the method of service is prescribed by section 53 of the Code, which prior to its amendment at the 1922 session of the legislature, to be considered later, read as follows:

''If the defendant be of unsound mind the summons must be served on him and one of the following named persons, if residing in the county, viz.: On his committee; or, if he have no committee, on his father; or, if he have no father, on his guardian; or, if he have no guardian, on his wife; or, if he have no wife, on the person having charge of him; or, if the defendant be a married woman of unsound mind, and her husband be plaintiff in the action, the summons must be served on her and her committee; or, if her husband be not plaintiff in the action, upon her and her committee, if she have one; or, if she have no committee, upon her and her husband: Provided, that the summons shall not be served upon a person of unsound mind, if he be under charge or treatment of a physician who certifies that, in his opinion, the service would be injurious to such person. Such certificate shall be returned with the summons.''

The petition herein states, and the record in the old case shows, that summons was served only upon the lunatic; and the petition also states, which upon this hearing must be taken as true, that he had no father, guardian or

wife, and that his sister, Mary F. Samuels, was the person having charge of him and with whom he resided in Montgomery county. Hence the committee or the sister, Mary F. Samuels, was the person upon whom summons should have been served, if a dual service was required by section 53, *supra*.

It is the contention of appellee that the entire provision in section 53 for service upon another than the lunatic is upon the condition "if residing in the county," and that the county referred to is the county in which the action is pending. It must be admitted that the position of this conditional clause is such as to make it appear that the legislature intended that a dual service was necessary only if some one of the named persons, or the person in charge of the lunatic, resided "in the county," either where the suit was pending or where the lunatic resided. But there is nothing anywhere in the section to indicate whether the legislature had in mind the county where the suit was pending or the county where the defendant was served.

To give the section the construction contended for would convict the legislature of providing for a dual service in some cases and a single service in others, and leaving it entirely to chance whether the service should be single or dual in any case, when obviously the purpose was to eliminate the chance in every case that service upon the lunatic alone would result in no defense being made for him, by providing for additional service upon the person who most probably would see to it that his interests would be defended.

This court has never, in any case, held that service upon a lunatic alone was sufficient compliance with this section, which has been in the Code in the above form for forty years, and substantially so for a much longer time, but has always held, either expressly or impliedly, that a dual service was required thereby.

In Bayne v. Stratton, 131 Ky. 494, 115 S. W. 728, it was held that service upon a lunatic defendant alone was not a sufficient compliance with this section; that the court did not, by such service, acquire jurisdiction to order a sale of his land, and that the sale was void. In that case, as in this, the suit was pending in a different county from that in which the lunatic resided, and, as here, he had no father, guardian or wife. The clause "If residing in the county" in section 53 was held to "refer to the county where the person of unsound mind is, at the time

he is served." In support of this construction, the court said: "Otherwise the summons could rarely be served on the person having charge of him, where he was not in the county in which the action was brought. The service on the lunatic himself is, in many cases, wholly valueless for his protection, and the requirement of service on one of the other persons named in section 53 is essential to the protection of this unfortunate class of persons."

In Allen v. Jenkins, 157 Ky. 406, 163 S. W. 234, just as in this case, the committee brought suit, under subsection 4 of section 489 of the Civil Code, against the lunatic for the sale of his land for his maintenance. Summons was served upon the lunatic and his custodian in a different county from the one in which the suit was filed. That service was attacked upon the ground that it did not appear from the record that the lunatic had no father, guardian or wife. In passing upon this question, the court necessarily considered section 53, and in construing it, held that:

"To make service of summons on the person having charge of the lunatic sufficient, it should appear in the record in some way that he had no committee, father, guardian or wife, or that one or all of these persons were plaintiffs in the suit, or interested adversely to the lunatic, and therefore not proper persons to be served with process.

It was then held that it sufficiently appeared from the record that the lunatic had no father, guardian or wife, and that as the committee was plaintiff, the service upon the custodian, in addition to service upon the lunatic, was a compliance with the section.

It is insisted, however, for appellee, that what the court said in these cases construing section 53, is dicta. We think not, but whether so or not, it gives to the section a sensible construction consistent with the evident purpose of its enactment, and without doing violence to its language.

To construe the clause as referring in all cases to the county where the suit was filed, makes this section mean that there must be a dual service if perchance any of the named persons, or the custodian of the lunatic, live in that county, but if not, then never mind. Such a construction makes of the section an absurdity, and must for that reason be rejected.

Hence we are sure that the court was justified in saying in the two above cases, where the clause "if residing

in the county'' was considered only with reference to the person having charge of the defendant, that it referred to the county in which the defendant was served. As that is as far as the section is involved here, since the committee was plaintiff and there was no father, guardian or wife residing anywhere, we might, we think, and possibly should content ourselves with approving such construction only, upon the ground that the exigencies of this case do not demand a further consideration of the section.

But it was held in Porter v. Eastern Asylum, 121 Ky. 816, 90 S. W. 263, that service upon the custodian in another county than that in which the suit was brought was not authorized where the father of the lunatic was living and resided in the county where the suit was pending. This is a construction, of course, that as to the father the clause ''if residing in the county'' refers to the county where the action is pending. The only way in which these cases can be reconciled—as should be done if possible, since possibly many titles depend thereon—is by holding that as to the father, the clause refers to the county where the suit is pending, but as to the custodian it refers to the county where the lunatic is served; and while, perhaps, it would have been difficult to have reached this conclusion as an original proposition, it certainly affords the only logical and just course to pursue now, since to overrule the Porter case at this late date would no doubt disturb many titles based upon that construction, and this we could not do with any reasonable regard for the *stare decisis* doctrine. In any event, and as already stated that is probably as far as we are justified in going now, we are sure the other two cases, *supra,* should not be overruled, but must be followed, since we thoroughly approve of the construction therein given the section with reference to the necessity of service on the custodian in addition to service on the lunatic, where none of the other persons named for substituted service are available for the purpose.

Hence it follows that, as in this action the committee was plaintiff, and defendant had no father, guardian or wife residing anywhere, service upon the person having charge of him was necessary to give the court jurisdiction.

The remaining question is, whether or not an amendment to section 53, enacted at the 1922 session of the legislature and after this action had been submitted for

judgment, cured the defective service upon the lunatic defendant in the old case. That amendment is chapter 62, page 203, of the 1922 Acts. It re-enacts the entire section and adds thereto the following provisions:

"2. That in actions brought by the committee of the person of unsound mind against him, as now provided by section 489, subsections four and five of the Civil Code of Practice, summons must only be served upon the person of unsound mind, unless he be confined in an asylum for the insane, when it must be served upon the superintendent thereof.

"3. Provided, further, that whereas, many suits have been had heretofore for the sale of a lunatic's land as provided in said section 489, subsections 4 and 5, Civil Code of Practice, and whereas, much confusion has existed in the manner of bringing the lunatic before the court, all judgments, rendered or which may be rendered, when the service has been had in conformity with this enactment, are hereby validated, and shall be held valid.

"Whereas, confusion and ambiguity in the law of procedure inevitably causes delay which necessarily in turn often constitutes a source of denial of justice, an emergency is declared to exist and this act shall take effect from its passage and approval by the Governor."

In support of the contention that this act of the legislature cured any defect in the service of the summons upon the lunatic in the old case, and perfected appellee's title to the land under the sale therein, we are referred to many authorities which sustain the general rule thus stated in 8 Cyc. 1023:

"A curative act is one intended to give legal effect to some past act or transaction which is ineffective because of neglect to comply with some requirement of law.

"In general statutes curing defects in acts done or authorizing the exercise of powers which act retrospectively are valid, provided the legislature originally had authority to confer the powers or authorize the acts.

"The legislature may legalize conveyances made by executors, administrators, guardians or persons in similar positions of trust, which are irregular because of some omission or lack of power on the part of such trustee."

Among the cases sustaining this general rule, are the following from this court: Thornton v. McGrath, 1 Duv. 354; Boyce v. Sinclair, 3 Bush 261; Marion Co. v. L. & N. R. Co., 91 Ky. 388, 15 S. W. 1061.

We have no fault to find with any of these cases, nor with the above statement of the general rule as to the power of the legislature to enact curative acts giving legal effect to past acts, but the case we have here does not fall under that general rule but comes within a well established exception thereto, which was not quoted by counsel for appellee, but which is stated immediately following the above quotation from Cyc. as follows:

"But where the court in which the proceedings were had, possessed no jurisdiction, its acts cannot be validated."

Since, as we have already seen, the court was without jurisdiction to order the sale of the lunatic's land until he had been served with process, as then required by section 53 of the Code, it follows that the legislature could not retroactively, as was the attempt by this amendment to section 53, cure that defect.

To hold otherwise would be to hold, in effect, that the legislature had the power retroactively to divest vested rights in property, which power, under all the authorities, it does not have, as was clearly pointed out in the case of Thornton v. McGrath, *supra,* and as is universally recognized.

In the case of Thornton v. McGrath, an act validating a judicial sale of an infant's property, that had not been appraised before the sale as required by law, was held constitutional, although a previous statute in force at the time of the sale declared that a sale without such appraisement was void, but upon the ground that the term "void" was used in the old act in the sense of "voidable," and where, too, the court had jurisdiction to order a sale of the land, and the irregularity was one affecting procedure only.

There is, therefore, no analogy between that case and this, since there the irregularity affected procedure only in a court having jurisdiction to order the sale, whereas here the attempt is to confer jurisdiction retroactively upon a court to divest a vested interest in land, when the court ordering the sale at the time was wholly without jurisdiction in the matter.

No case has been cited, and we have been unable to find a single one, holding that the legislature has the power retroactively to validate a judgment divesting vested rights in real estate, rendered by a court that at the time had no jurisdiction to render the judgment, as is the attempt of this act in so far as it is applicable to

this case. We are, therefore, clearly of the opinion that this act is ineffective in this case, and does not validate the void proceedings under which appellee claims title to the land involved.

This conclusion renders it unnecessary to consider the further contention of appellant that the amendment to section 53 is inapplicable to this case, because it had been fully prepared and was under submission for final judgment in the court below when the amendment was enacted and became effective.

Wherefore the judgment is reversed, and the cause remanded with directions to overrule the demurrer to the petition, and for proceedings consistent herewith.

Whole court sitting.