## Ramsey's Executor v. Ramsey et al.

(Decided March 21, 1930.)

508

BLAKEY, DAVIS & LEWIS for appellant.

WM. J. COX and WOODWARD, HAMILTON & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On December 7, 1887, Nora Brown and George W. Ramsey were married. On June 17, 1888, Nora Brown Ramsey was adjudged by the judgment of the Hopkins county court to be a person of unsound mind, and was committed to the state asylum at Hopkinsville, Ky., where she has ever since been. She is yet a person of unsound mind. On August 23, 1897, George W. Ramsey filed in the Hopkins circuit court a suit against Nora Ramsey for divorce on the statutory grounds of "living separate and apart for more than five consecutive years." On the day the petition was filed, the clerk of the Hopkins circuit court indorsed thereon the following: "1897, Aug. 23, Pet. filed. Sum. & copy iss. Att. Jno. H. Christy, Clk." The only return of the sheriff on that summons was that it had been executed on Nora Brown Ramsey by delivering to her a copy thereof on August 26, 1897. On September 10, 1897, George W. Ramsey filed in his pending suit for divorce his affidavit to the effect that the defendant, Nora Brown Ramsey, was a person of unsound mind, and had no guardian, curator, or committee. Along with the affidavit was filed a motion that a guardian ad litem be appointed for the defendant. The court sustained the motion, and appointed W. D. Orr, who, on October 2, 1897, filed a report to the effect that he could make no defense to the action. Proof having been taken, the court on October 7, 1897, entered a judgment divorcing the parties. After the judgment of divorce had been entered in the Hopkins circuit court, George W. Ramsey remarried and by his second marriage had one son, who died in the lifetime of George W. Ramsey, leaving a widow and two infant children.

It does not appear from the record or briefs what has become of the second wife of George W. Ramsey, but we are informed in briefs, and repeat it for its historic value, that George W. Ramsey, who is now dead,

by his will bequeathed the sum of $4,000 in trust, the income therefrom to be applied to the support and main-tenance of Nora Brown Ramsey for her life, with power on the part of the trustee to encroach upon the principal in case of need. Any part of the principal unexpended at the time of the death of Nora Brown Ramsey is to revert to the residuary of George W. Ramsey's estate. The residuary estate is divided equally by the will between the widow of the son of George W. Ramsey and the children of that union. Nora Brown Ramsey, through her committee, as we are informed in brief, sought by an action in the Jefferson circuit court to have that court elect for her a renunciation of the will of George W. Ramsey on the theory that the judgment of divorce of 1897 was void, and that she was still the wife of George W. Ramsey at the time of his death. Meeting with some procedural objections, Nora Brown Ramsey, through her committee, then filed a motion in the Hopkins circuit court supported by affidavits, by which she sought to set aside the 1897 judgment for divorce on the grounds that it was void, in that the summons in that case had not been served in accordance with the provisions of the Code governing the service of process upon persons under disability, and hence she was not before the court when the judgment for divorce was entered. The Hopkins circuit court sustained her motion, and, from the judgment setting aside the 1897 judgment as void, this appeal is prosecuted.

The parties are agreed that the sole question presented for decision on this appeal is whether the judgment of 1897 was void or voidable only. Section 53 of the Civil Code of Practice, in effect at the time the 1897 suit was filed and tried, read:

"If the defendant be of unsound mind the summons must be served on him and on one of the following named persons, if residing in the county, viz.: On his committee; or, if he have no committee, on his father; or, if he have no father, on his guardian; or, if he have no guardian, on his wife; or, if he have no wife, on the person having charge of him; or, if the defendant be a married woman of unsound mind, and her husband be plaintiff in the action, the summons must be served on her and her committee; or, if her husband be not plaintiff in the action, upon

her and her committee, if she have one; or if she have no committee, upon her and her husband: Provided, That the summons shall not be served upon a person of unsound mind, if he be under charge or treatment of a physician who certifies that, in his opinion, the service would be injurious to such person. Such certificate shall be returned with the summons.''

The record in the instant case does not affirmatively show that Nora Brown Ramsey was served, as the Code thus required, and the questions presented for decision are: (1) Will we presume that she was properly served since the court appointed a guardian ad litem, and in its judgment granting the divorce recited ''and it appearing that the defendant (Nora Brown Ramsey) is properly before the court,'' and (2) even if not properly served, did the fact that a guardian ad litem was appointed and filed a report render the judgment merely erroneous and not void?

A great number of authorities are cited pro and con on these questions presented for decision, and, without an analysis of them, and keeping in mind the situation presented by them, much confusion may result from just reading the language of the opinions. The first thing to keep in mind is the distinction between a direct attack on a judgment, such as we have here, and a collateral attack. The reason for that distinction is well pointed out in the case of Gardner v. Howard, 197 Ky. 615, 247 S. W. 933, 934. In that case the committee of a lunatic instituted an action against him pursuant to section 489 of the Civil Code of Practice for the sale of some land owned by a lunatic. Judgment was entered ordering the sale, and the appellee Howard became the purchaser. The sale was confirmed, the purchase price paid, and the land was conveyed to Howard. Later, the lunatic died, leaving a number of heirs, most of whom executed a quitclaim deed to the land to Howard. The appellants, who were the heirs who did not join in the quitclaim deed, then brought suit against Howard attacking the validity of the judgment, ordering the sale, and under which he had purchased the land upon the ground that the lunatic had not been summoned, as required by section 53 of the Civil Code of Practice. A demurrer was sustained to

this petition as amended, and the heirs appealed. We said:

> "It is necessary, before attempting a decision of the ultimate question at issue, to decide whether this is a direct attack upon the validity of the judgment . . . or a collateral attack . . . since, if the former, no presumptions are to be indulged in favor of the judgment's validity, and even the verity of the record upon which it was entered may be questioned: whereas, if the latter, the judgment is presumably valid, and will not be declared void unless that fact affirmatively appears from the record.
>
> "The rule for determining whether an attack upon a judgment is direct or collateral is thus stated in Wayne v. Brumley, 190 Ky. 488, 227 S. W. 996: 'A direct attack is an action or motion for the specific and only purpose of setting aside or annulling the judgment of a court; and any action which has for its purpose the accomplishment of any relief other than the setting aside of the judgment is not a direct attack.' "

It was held in this Gardner case that the attack was direct, and that, inasmuch as the service upon the lunatic in the suit brought by his committee had not been in accordance with section 53 of the Code of Civil Practice, the judgment was void. Speaking to that point, we said:

> "No rules are better settled in this state than that the power of a court to sell the land of a person under legal disability is purely statutory; that, unless the statute conferring the power is strictly followed, the sale is absolutely void; and that service of summons upon the owner, be he lunatic or infant, in the prescribed manner is a prerequisite to jurisdiction."

See, also, Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, 113, L. R. A. 1917C, 171.

If we keep in mind the distinction between a collateral attack and a direct attack upon a judgment and the presumptions that will be indulged in either case to support the attacked judgment, we will have no difficulty in understanding the cases and in putting the proper valuation upon the language used in them. Let us first attend to those cases where the attack was collateral.

The case of Carr's Adm'r v. Carr, 92 Ky. 552, 18 S. W. 453, 13 Ky. Law Rep. 756, 36 Am. St. Rep. 614, was a suit in which the plaintiff, claiming to be the widow of the deceased, sought a widow's interest in his estate. As in the instant suit, she claimed that a judgment for divorce which the deceased had procured against her was void because it had been obtained on a warning order in the affidavit to obtain which the deceased had stated that she lived in Stewart county, Tenn., but had failed to give her postoffice address as the Civil Code required. It was held that the failure to give the postoffice address in the affidavit for the warning order did not make the warning order void, but simply erroneous, and that all the Code required in this regard was a substantial compliance with its provisions.

The case of Wilson v. Teague, 95 Ky. 47, 23 S. W. 656, 15 Ky. Law Rep. 414, involved the validity of a judgment in a suit brought by the administrator of a decedent to settle his estate. Some of the defendant heirs of the decedent were nonresidents. A judgment was entered in that suit ordering a sale of the property of the decedent to pay his debts and the property was sold. Thereafter, these nonresident defendants brought suit to recover the land which had been sold on the ground that they were not before the court in the suit brought by the administrator, since no affidavit for warning order had been filed in that action. The petition in the settlement suit set up facts for a warning order, and it would have been sufficient to support a warning order had it been sworn to. It did not appear on its face that the petition had been sworn to, but we held that it would be presumed that the clerk had sworn the plaintiff to the petition, although he had failed to attach to the petition a certificate to that effect. We further held that, under the facts of the case, it would be presumed that the warning order had been re-entered and readopted on a sufficient oath made before the court.

The case of Sears' Heirs v. Sears' Heirs, 95 Ky. 173, 25 S. W. 600, 15 Ky. Law Rep. 510, 44 Am. St. Rep. 213, was in all respects like that of Wilson v. Teague.

The case of Meddis v. Dellinger, 112 Ky. 500, 66 S. W. 185, 23 Ky. Law Rep. 1803, was a suit for specific performance, in which the defense was that the title of the remote grantor of the plaintiff was defective. This remote grantor had procured title at a judicial sale. In

the suit in which the judicial sale had been had, some of the defendants were nonresidents. In the record in that suit, it appears that an affidavit for a warning order had been filed. The clerk had indorsed on the petition and on the rule docket that a warning order had been made, but it could not be found in the papers. The warning order attorney had filed his report which was in the record. We held that it would be presumed that the warning order had been made, especially in view of the indorsements on the petition and on the docket.

In the case of Steel v. Sterns Coal & Lumber Co., 148 Ky. 429, 146 S. W. 721, the plaintiff, who was the daughter of a remote grantor of the defendants, sued to recover the land. This remote grantor had mortgaged the land in question, and that mortgage had been foreclosed by a suit begun in 1872, but which was not decided until 1880. His daughter, the plaintiff in the present suit, was a party to the action to foreclose the mortgage, and at that time was a nonresident. A warning order was issued in 1872 and another in 1880. In this collateral attack, she insisted that she was not before the court in the foreclosure suit, because the record failed to show that any affidavit had been filed for the warning order of 1872. The court held that, although the warning order of 1872 was irregular, another issued in 1880, and, as the record was silent about the affidavit for the warning order of 1880, it would be presumed that the court had an affidavit before it when it made the warning order of 1880.

The case of Baker v. Baker, Eccles & Co., supra, is particularly interesting and instructive. In that case, Baker died, leaving a widow in Tennessee and a mother in Kentucky. On ex parte proceedings the widow had herself appointed administratrix in Tennessee, and by suit settled in that state so much of Baker's estate as she could get control of. In the Tennessee settlement suit the mother was before the Tennessee court only by constructive process. It was therein decided that Baker was a resident of Tennessee. Likewise on ex parte proceedings the mother had herself appointed administratrix of Baker's estate in Kentucky, and there brought a suit to settle so much of Baker's estate as she had control of. The widow was before the Kentucky court only on constructive service. It was therein held that Baker was a resident of Kentucky. At the time of his death, Baker held some stock in Baker, Eccles & Co., a Ken-

tucky corporation, the certificate for which had come into the possession of the widow. She demanded a transfer of the stock, and, when the company declined to comply with her demand, she brought suit against the corporation to compel it to transfer the stock. The mother intervened. If Baker at the time of his death was a resident of Tennessee, his widow was entitled to all of the stock, but, if a resident of Kentucky, she was entitled to but one-half of it, the mother being entitled to the other half. The mother relied on her Kentucky judgment to the effect that Baker was a resident of Kentucky, and one of the questions was whether this judgment was void as to the widow or not. It was held that the judgment was void, due to a defect in the affidavit for the warning order by which it was sought to bring the widow before the court. It will be noted that the basic principle of this case is that, unless a person is brought before the court in the manner pointed out by the Code, he is not before the court, and the court has no jurisdiction to enter judgment against him. It will be further noted that the judgment was held void, even though the attack was collateral. We said:

> "It is true that every presumption must be indulged to support a judgment against collateral attack, for in this respect there is a well-defined and distinct difference between a direct and a collateral attack on a judgment.
>
> "It is also well settled that on a collateral attack a judgment cannot be successfully assailed unless it is void for a want of jurisdiction in the court to render the judgment that appears upon the record."

After holding that the attack was collateral, we continued:

> "Being then a collateral attack, will we presume that all of the proceedings taken by the court necessary to sustain the validity of the judgment were regular? The rule upon this subject is that if the record is ancient, or it does not affirmatively show everything that was done, the presumption will be that the things it does not show have been done in such manner as that, if they appeared in the record, there would be no defect, and so the judgment on collateral attack will be treated as errone-

ous, but not void, and consequently not subject to collateral attack. But if the record is fresh and affirmatively shows everything in such a way as that no presumption can be indulged in that something was done that does not show in the record, then the record must control, for there is no room to presume that something else may have been done that would cure the defect; and in this state of case, **if** the defect is substantial, the judgment is void and may be attacked collaterally."

The case of McNeal v. Smith, 190 Ky. 355, 227 S. W. 468, presented the following state of case: By a deed of trust G. was made the life tenant, with remainders over. The deed of trust provided that on G.'s request the trustee could sell or mortgage the land which was the subject of the trust. The land was mortgaged. Suit was brought to foreclose the mortgage; G. and two infant remaindermen being made defendants. Service was had on the infants by the summons being served on the father instead of the mother, as should have been done under the facts in that case to comply with the Civil Code. Judgment was entered ordering a sale of the property, and the sale was had. Before a deed was made conveying the property pursuant to the sale, G. made a written request that the trustee convey the property to the purchaser, and this the trustee did. Later the title to this property by mesne conveyances vested in S., who contracted to sell it to M., who refused to take title. S. sued for a specific performance, and M. defended on the ground that the judgment in the foreclosure suit was void because the infant defendants had not been properly summoned. It was held that M. had to take the property. There was some language in the opinion indicating that the court thought that perhaps the judgment in the mortgage foreclosure was not void, but the court rested its decision that M. had to take the property on the ground that the title had been cleared by G. making a written request upon the trustee to convey the property and by the trustee conveying the property in accordance with that request.

The case of Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S. W. 329, involved an attack on a judgment in partition proceedings in the county court which had set aside some of the lands sought to be partitioned to one Helm. There was nothing in the record in the

county court to show whether Helm owned or did not own the land. It was held that it would be presumed, after the passage of years, that the county court had before it the jurisdictional fact that Helm owned part of the land.

The case of Tarter v. Wilson, 207 Ky. 535, 269 S. W. 715, was a suit brought to enjoin the obstruction of a passway. The defense was that the county road had been altered by a judgment of the county court. The record of the county court filed as an exhibit failed to show any service of process. We held that on a collateral attack, nothing appearing to the contrary, service would be presumed.

The case of Lowe v. Taylor, 231 Ky. 273, 21 S. W. (2d) 284, was a suit for specific performance. Taylor had perfected his title in a suit brought against his infant children for reformation of the deed under which he held. In the reformation suit, the summons had not been served properly on the infants, in that the summons had been served on a guardian ad litem appointed pursuant to section 52 of the Code of Civil Practice instead of the mother of the infants, as should have been done. Although the attack on the judgment was collateral, yet, under the principle of the Baker, Eccles case supra, it was held that the judgment was void. That case cited in support of the conclusion reached in Cain v. Hall, 211 Ky. 817, 278 S. W. 152.

The case of Logsdon v. Logsdon, 204 Ky. 104, 263 S. W. 728, was also a collateral attack on a judgment. We there held that the judgment which was fair on the record which supported it could not be collaterally attacked by an attempt to show aliunde the record which supported it that the affidavit upon which the warning order had issued was false and the result of perjury.

We do not pretend to have exhausted the cases involving collateral attacks, but we have analyzed all those cited in briefs, except the two cases of Ratliff v. Childers, 178 Ky. 102, 198 S. W. 718, and Furlong v. Finneran, 223 Ky. 558, 4 S. W. (2d) 378. We have not overlooked these cases. We will discuss them later in this opinion.

From this resume, it will be seen that, in a collateral attack on a judgment, every presumption will be indulged to support it at least if it be an ancient judgment, and that the record must affirmatively establish

the want of process or the proper service thereof before the courts will on such an attack hold the judgment void.

Let us now attend the cases cited in briefs which involved a direct attack on the judgment which it was sought to have declared void. The first case is that of Bayne v. Stratton, 131 Ky. 494, 115 S. W. 728. That was a suit for a sale of land and a division of the proceeds. One of the defendants was a lunatic, and summons was served only on him. Later there was a judgment and a sale. The purchaser filed exceptions to the report of sale, and from the judgment overruling the exceptions there was an appeal. We held that the lower court had no jurisdiction to enter the judgment because the lunatic was not before the court, since the service had not been had in accordance with the Code. *We further held that, the lunatic not having been properly summoned, the order appointing the guardian ad litem and his report added nothing towards the validity of the judgment.* We pointed out the reason for the service of process in such a state of case on some person other than, and in addition to, the lunatic.

The case of Roy v. Allen's Adm'r (Ky.) 118 S. W. 981, was a suit to settle an estate of a decedent. The infant defendants were not summoned at all, but a guardian ad litem was appointed for them, and he filed a report. There was a judgment ordering a sale of the property, and the sale was had. The purchaser filed exceptions, and on appeal it was held that as to the infants, the judgment was void, that the appointment of the guardian ad litem was void because under the Code he could not be appointed until the infants had been properly summoned.

The case of Barry v. Fain's Adm'r, 172 Ky. 308, 189 S. W. 220, was also a suit to settle an estate of a decedent. One of the defendants was a lunatic. Service was had upon the lunatic and on the person having her in charge, but there was no service upon the lunatic's committee, although the committee was appointed before the judgment was entered. After the judgment had been entered, the committee undertook to file an answer ratifying the sale which had been had under the judgment. The purchaser at the sale filed exceptions. On appeal it was held that the lunatic was not before the court, and the sale did not pass title.

The case of Adams v. Gardner, 211 Ky. 246, 277 S. W. 284, was a suit for a sale of land and a division of

the proceeds. One of the defendants was a lunatic. No service was had except upon her. There was a judgment entered ordering a sale, and a sale was had. Exceptions were filed to the sale. The lunatic's committee then filed an answer ratifying the sale, but, on appeal, it was held that, as there had been no service on the committee, the lunatic was not before the court, the sale passed no title, and the filing of the answer of the committee after the judgment was of no avail. The case of the First State Bank of Elkhorn City v. Thacker's Adm'x, 215 Ky. 186, 284 S. W. 1020, 1021, was a suit to settle an estate of a decedent. The widow and infant children of the decedent were defendants. Service was had upon the infant defendants by summons being served on the guardian ad litem instead of the person having these children in charge. There was a judgment ordering a sale of the land. A sale was had, and the sale was confirmed. Later the purchaser, without notice to the infants and other defendants, moved to have the sale set aside on the ground that it was void. It was held that such a motion could not be made without notice, but it was also held that the infants were not before the court, and the appointment of the guardian ad litem availed nothing. In the course of the opinion we said:

"Formerly the rule was that, if the infant was not summoned, but a guardian ad litem was appointed for him and filed report, the judgment was voidable, but not void . . . But the rule under the present Code now is that, unless the infant is summoned, he is not before the court, and all that is done is done without jurisdiction."

Again we do not pretend to have exhausted the cases involving direct attacks. We have discussed all those cited in briefs which are representative of all like cases.

From this rather exhaustive review of the authorities, it thus plainly appears that on a collateral attack the record must affirmatively show at least, where the judgment attacked is ancient, a lack of jurisdiction to enter the judgment attacked, and that, if it does not so affirmatively show, the presumption of jurisdiction will be indulged. However, on a direct attack there are no presumptions; the record must affirmatively show the

jurisdictional facts. If the lunatic or infant be not summoned in accordance with the requirements of the Code, he is not before the court, and an appointment of a guardian ad litem followed by a report from such guardian ad litem will not cure the defect nor make the judgment valid. Do the cases of Ratliff v. Childers, and Furlong v. Finneran, supra, lay down any different rule? In the Ratliff case the plaintiff sued to recover lands which the defendant held under a title procured at a sale in a suit where the present plaintiff had been a defendant. The plaintiff claimed that he was not before the court in the suit in which the sale was had, because he was then an infant under 14 years of age, and had not been properly summoned. It appeared that at that time he lived with his father, who was also a party defendant to the suit. The sheriff's return on the summons in that suit was that he had executed the summons "in full." It was admitted that the summons had been served on the father. The court held that, the attack being collateral, therefore, under familiar principles, it would be presumed that the sheriff meant by his return "in full" that he had served the father, not only individually, but for his son, as should have been done to meet the Code requirements. So far this case is in line with the authorities above cited, but it must be admitted that at the end of the opinion there does appear the statement that, even if the service had not been good, yet the judgment in the former suit would not have been void because a guardian ad litem had been appointed to defend for the infant and he had filed a report. To this extent the case is out of line with all the other authorities cited.

In the case of First State Bank v. Thacker, supra, the court, after pointing out that the appointment of a guardian ad litem and the filing of a report by him under the present Code could not cure the defect of a faulty service of summons upon an infant, supported the Ratliff case upon the correct ground that on a collateral attack the court would presume that the infant had been properly summoned. The case of Furlong v. Finneran, supra, in which the opinion for the court was prepared by the writer of the Thacker opinion, supra, was a suit for a sale of land and a division of its proceeds. The parties to the suit had procured title to the property in a prior settlement suit in which some of the defendants were nonresident infants. The warning order attorney had been appointed on an affidavit sworn to by the lawyer

of the plaintiffs in settlement suit without it appearing that all of the plaintiffs in that suit were absent from the county. The warning order attorney made a report, and the guardian ad litem was appointed and reported. It was held that, as this was a collateral attack on the judgment in the settlement suit, it would be presumed as in the Wilson v. Teague, and Sears' Heirs v. Sears' Heirs, supra, that the court had a proper affidavit before it in the appointment of the guardian ad litem. In writing the opinion, however, the excerpt from the Ratliff case which had been discredited in the Thacker case, supra, was undoubtedly inadvertently copied. Thus we see that the Ratliff and the Furlong cases are in the last analysis not out of line with the other authorities, although that which was said in the Ratliff case at the end of the opinion cannot be reconciled with the principles we have adduced from the cases. We believe this excerpt to be dicta, but, if it be not dicta, in order that there may be no more confusion about it, it is now definitely overruled.

Applying the principles we have thus worked out from the cases to the instant case, we find that we have here a direct attack on the divorce judgment of 1897. No presumption can be indulged to support the service of process in that case. The record fails to disclose service of process on any one except Nora Brown Ramsey, and, if so, she was not before the court when it entered the judgment of 1897. The indorsement of the clerk on the petition shows that only one copy of the summons was issued. In the taxation of costs, only one copy is charged for. There is nothing to show service of process upon any one other than Nora Brown Ramsey, then a lunatic. Nor, as we have seen, did the appointment of the guardian ad litem and the filing by him of a report, add to the validity of the judgment. Nora Brown Ramsey, not having been properly served, was not before the court, and, until she was, there was no authority for appointing a guardian ad litem, and his appointment was void.

It results from what we have said that the 1897 judgment of divorce was void, and that the judgment in the instant case setting it aside was proper. It is therefore affirmed.

Whole court sitting.