# Wilburn et ux. v. Wilburn.

March 3, 1944.

Yates & Jayne and H. R. Wilhoit for appellants.

G. W. E. Wolfford and D. V. Kibbey for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In November, 1915, the appellant, Richard Wilburn, and the appellee, Ida Wilburn, were married and lived together as husband and wife until March 23, 1935, when the wife became insane and was adjudged so on an inquisition duly held for that purpose. Pursuant thereto she was confined in Eastern State Hospital at Lexington, Kentucky, where she remained as a patient of that institution until in September, 1942, when she was restored by another inquisition held for that purpose.

Before her restoration, and on October 10, 1941, her husband (one of the appellants) filed an action in the Carter circuit court, the county where the parties resided before appellee's confinement supra, and where the husband continued to reside, against his insane wife by which he sought a divorce from her on the ground that they had lived separate and apart (though in the same building) for five years antedating appellee's insanity. Upon the filing of that petition the clerk issued process directed to the sheriff of Fayette County which he served and made this return: "Executed October 15, 1941, the within summons on Ida Wilburn, confined in the Eastern State Hospital for Insane, by delivering a true copy thereof to the said Ida Wilburn," the return being signed by the then sheriff, by one of his deputies.

That was the only process, as shown by the record in the divorce action, through and by which the court obtained jurisdiction of the appellee in that divorce action. No order appears therein appointing a guardian ad litem for her, but an attorney of the local bar purports to accept notice to take depositions, attaching to his signature to the acceptance the words "guardian ad litem for defendant." He later filed his report which he subscribed in the same manner. Plaintiff took the depositions, not on interrogatories, but by oral examination and in which he testified in support of his petition. The court then submitted the cause and later rendered judgment sustaining the prayer of the petition by granting the divorce therein sought.

In the meantime—and shortly after granting the divorce—the appellant, Richard Wilburn, married his co-appellant, Myrtle Bailey Wilburn, but no children appear to have been born of that marriage, though she had a son by a former husband. After appellee's restoration she filed this separate action in the same court which at first sought to not only set aside the judgment granting the divorce, but also to settle her property rights and to recover alimony. Later her petition was amended by withdrawing all relief originally prayed for, except to set aside the divorce judgment, on the ground that it was void because the court did not obtain in that case jurisdiction of her person, she not having been served therein in a manner to bring her before the court. On final submission the court sustained her petition, as finally amended, and set aside

the divorce judgment because the court granting the divorce possessed no jurisdiction of appellee's person at the time it was rendered. To reverse that judgment appellants prosecute this appeal.

The independent action filed by appellee—which finally sought only the setting aside of the divorce judgment—was tantamount, and in all respects conformed to the practice outlined in section 763 of our Civil Code of Practice and had the same effect as if the motion under that section had been made in the case in which the attacked judgment was rendered. We so determined in the case of Fugate v. Fugate, 259 Ky. 18, 81 S. W. (2d) 889, and in the cases therein referred to, of First State Bank v. Thacker's Adm'x, 215 Ky. 186, 284 S. W. 1020, and Wyatt's Trustee v. Grider, 158 Ky. 440, 165 S. W. 420. A divorce judgment was set aside upon the same ground as herein urged, in the Fugate case as was also true in the case of Ramsey's Ex'r v. Ramsey (hereinafter referred to) 233 Ky. 507, 26, S. W. (2d) 37.

Rarely, indeed, is it that two distinct cases emanating from different courts are so nearly parallel in their facts, and the principles of law governing them, as is true with respect to the Ramsey case and the instant one. There is no possible difference in the facts of the two cases, unless it be that (the fact not being shown in the opinion in the Ramsey case) in that (Ramsey) case the insane wife from whom her husband had obtained a divorce while she was confined in the asylum, may have made her motion to set aside the divorce judgment in the divorce action after it had been properly re-docketed. However, as we have seen, the practice of filing an independent action to obtain the same relief would nevertheless be a compliance with the provisions of 763, supra of our Civil Code of Practice.

The opinion in the Ramsey case is most elucidating in the determination of the controverted question presented in that case, and which is the same as is presented in this one. The apparent state of confusion, as gathered from former opinions of this court, was lucidly dealt with and gone into by the late Judge Dietzman who wrote that opinion for the court. He differentiated between *collateral* and *direct* attacks, and clearly pointed out that a judgment in a collateral attack would be upheld, unless the record in which it was rendered *affirma-*

*tively* showed the invalidating fact; whilst in a direct attack no presumption would be indulged in order to sustain the judgment, but which will always be done in a collateral attack. He referred to and analyzed a number of prior opinions from this court placing them in the proper class of attacks to which they inherently belong. He also distinctly declared that an attack contemplated by section 763 of our Civil Code of Practice was distinctly "a direct attack," fortifying that conclusion by some prior opinions of this court.

Since, therefore, the opinion in the Ramsey case completely supports the judgment appealed from and, since we are in complete accord therewith, we feel it would be unnecessary to restate and elaborate upon the involved practice and the law governing such situations. But it is insisted that the appointment of a guardian ad litem for appellee (defendant in the divorce action) cured the defect of the service upon her and cases are cited in support of that contention, one of which is Ratliff v. Childers, 178 Ky. 102, 198 S. W. 718. However, it is pointed out in both the Ramsey and Thacker opinions that the prevailing practice when such former opinions were rendered (except perhaps the Childers case) the practice approved the rule contended for, but that "the present Code now is that, unless the infant is summoned, he is not before the court, and all that is done is done without jurisdiction" [233 Ky. 507, 26 S. W. (2d) 42] including the appointment of a guardian ad litem. The same holding was made in the Ramsey case in which the disability was insanity, as is true in this case, and not infancy, as was true in the Thacker case.

Also in the Ramsey opinion the rule as approved in the Childers case—that the appointment of a guardian ad litem sufficed to bring the non sui juris defendant before the court—was expressly overruled. Neither does the fact that the alleged divorced husband subsequently marries before the motion to set aside the divorce judgment was made, have any effect upon the case, and which was expressly so held in the Ramsey opinion wherein such second marriage occurred. Neither does the case of Droste v. Droste, 138 Ky. 53, 59, 127 S. W. 506, 512, also cited by counsel for appellants, have any bearing upon the question here involved, since in that and other similar cases—which are also cited—the "Divorce" with which the court was dealing was only *erroneously* grant-

ed and the practice was not such as to render it absolutely, void. The expressions in those opinions with reference to the stability of divorce judgments contemplated only *erroneous* procedure, but not in a manner so as to render the judgment invalid and void. The mandatory requirement of "due process," prescribed by both the Federal and our Constitution makes no exception, and applies to divorce judgments as well as to all others.

The summons in the divorce case should have been served not only on the lunatic wife, as was done, but also on another occupying the status named in section 53 of the Civil Code of Practice, and in the order therein named, if there be such. However, the wife at the time of filing the divorce action had no committee, nor is it shown that she had a father or a guardian or a mother. Her husband was the plaintiff, which eliminated him as the other one upon whom the service should have been made, and which left, as the only second one for service, the person having her in charge, which was the superintendent of the hospital in which she was incarcerated. Perhaps also it would have been proper if the husband had procured the appointment of a committee for her before filing the divorce action upon whom service could be made. The section of the Code (53) clearly contemplates the service of the summons on another person and, also on the lunatic. Unless that is done no jurisdiction of the person of the lunatic is obtained, except as provided in subsection (1) of the proviso to that section.

It therefore follows that the court correctly and properly set aside the judgment of divorce and it is affirmed; the whole court sitting.